In the Matter of IRENE C. MICHEL, as Executrix of GEORGE L. MICHEL, Deceased, Petitioner.

DAVID LERNER, Respondent.

Supreme Court, Special Term, Queens County, July 28, 1945.

*Maxim Ingber* for petitioner.

*Alexander Savanuck* for respondent.

COLDEN, J. The petitioner is the owner of a one-story building located on the northwest corner of Queens Boulevard and 42d Avenue, in Long Island City, occupying a plot 100 feet by 100 feet. The building has been divided into five stores facing on Queens Boulevard and four stores fronting on 42d Avenue, The petitioner brings this proceeding under section 4 of the Commercial Rent Law (L. 1945, ch. 3, as amd. by L. 1945, ch. 315), for an order fixing the reasonable rent for the commercial space occupied by the respondent.

The aggregate income of the premises is found to be as follows: Store No. 41–17 Queens Boulevard, occupying 600 square feet, pays emergency rent of $1,200 per annum; store No. 41–19–21 Queens Boulevard, occupying 1,900 square feet, pays emergency rent of $3,300; store No. 41–23–25 Queens Boulevard, occupying 1,000 square feet, pays emergency rent of $1,500; store No. 41–27 Queens Boulevard, occupying 1,235 square feet, is presently vacant, but the minimum rental return would be more than $1,235, which is the amount used by the court in this proceeding; store No. 41–29 Queens Boulevard, occupying 1,250 square feet, occupied by the respondent, David Lerner, pays emergency rent of $1,380; store No. 43–50 42d Avenue, occupying 489 square feet, pays $480, the prior rental, which the petitioner has not increased by the 15% allowed as additional emergency rent; store No. 43–48 42d Avenue, occupying 627 square feet, pays emergency rent of $414; store No. 43–46 42d Avenue, occupying 627 square feet, pays $480, the prior rental,

which the petitioner ha's not increased by the 15% allowed as additional emergency rent; store No. 43–44 42d Avenue, occupying 627 square feet, pays emergency rent of $414. The gross income, including the amount allowed for vacant store No. 41–27 Queens Boulevard, is $10,403.

The petitioner has complied with the provisions of the law with reference to the furnishing of a bill of particulars and has offered proof of the cost of maintenance and operation of the entire property, including amounts paid for taxes, but excluding amortization and interest paid on the mortgage on the premises. The court finds that the fair and reasonable value of the property is $65,000, for which sum it was purchased and is now assessed. There is a first mortgage upon the property in the sum of $15,000. There was satisfactory proof, and the court finds, that the cost and maintenance of the entire property, not including interest on the mortgage, amount to $4,489.53. The petitioner offered proof that the depreciation, for which she claims credit, amounts to $1,171.16.

Section 1 of the Commercial Rent Law says in part: " It is hereby found by the legislature that for the duration of such emergency, the establishment of a maximum rent for commercial space at a level of fifteen per centum above rents charged on March first, nineteen hundred forty-three, or at a level otherwise determined as provided herein, will curb the evils arising from such emergency and will accomplish the purposes hereby sought to be achieved."

Section 3 provides: " From and after the twenty-fourth day of January, nineteen hundred .forty-five, and during the continuance of the emergency as defined in section fifteen, any rent which exceeds the emergency rent shall be presumed to be unjust, unreasonable and oppressive."

Section 4 then provides that " A rent, exceeding in amount the emergency rent, may within the limitations specified by this section, be fixed by arbitration or by the supreme court. The rent to be so fixed shall be a reasonable rent based on the fair rental value of the tenant's commercial space as of the date the application to the supreme court or submission to arbitration is made. * * * A net annual return of six per centum on the fair value of the entire property including the land plus two per centum of principal for amortization of any mortgages thereon shall be presumed to be a reasonable return."

In view of the language of the quoted sections, and in light of the emergency as declared by the Legislature in section 1, it is evident that the Legislature intended to establish, during

the present emergency, a ceiling over commercial space rentals. The procedure indicated is that every landlord is entitled to an increase of 15% above the rent reserved under any lease, agreement or tenancy in force on March 1, 1943, or if the commercial space was not used or occupied on such date for commercial purposes, the "emergency rent" shall be the reasonable rental thereof as of March 1, 1943, plus 15% thereof.

Under section 4 the landlord is afforded the procedure under which he may establish that the emergency rent of 115% of the March 1, 1943, rent or rental value is *not* a "reasonable rent." The landlord may show under this section that the fair rental value of the entire commercial space involved is greater than the emergency rent and that consequently the landlord is entitled to an increase. The amount of that increase must be deemed to be fixed as a maximum at 6% of the fair value of the property, including the land, plus 2% for amortization of principal secured by mortgage thereon. If the purposes of the Commercial Rent Law are to be secured, it must be deemed that the ceiling for "reasonable rent" is fixed by the provisions of section 4 so that the net return to the landlord shall not exceed 6% plus the mortgage amortization of 2%.

In the instant case the gross rental is $10,403; the total cost of maintenance and operation of the entire property (not including interest on the first mortgage, amortization or depreciation), is $4,489.53, leaving a net profit of $5,913.47. Deducting therefrom amortization at 2% on the $15,000 mortgage ($300) and a 6% return on $65,000 ($3,900) there remains as profit the sum of $1,713.47. If the landlord were allowed the depreciation, i.e., $1,171.16, his profit would be $542.31 more than the 6% plus amortization fixed by the statute.

In fixing the rental value of the vacant store, premises 41-27 Queens Boulevard, the court has used as a factor the rate of $1 per square foot per annum, which is less than the rental rate of any one of the other stores on Queens Boulevard involved in this proceeding. At the hearing the landlord vigorously insisted that the item of depreciation must be included in the calculation of the cost of maintenance and operation. As indicated above, the allowance for depreciation would not, in any event, change the result. It is apparent, however, that the statute does not permit consideration of depreciation for the reason that section 4 provides the precise formula for arriving at reasonable rent by mathematical computation. (*Matter of Frankel* [*Hatters' Oakhide Boxes*], 269 App. Div. 531.) The statute permits the court to include the cost of

repairs, decorating and maintenance, the furnishing of light, heat, steam, hot and cold water, telephone, elevator service, cleaning service, linen service, janitor service, removal of refuse and any other facility or privilege connected with or furnished by the landlord for the use or occupancy of the commercial space (Commercial Rent Law, § 2, subd. [k]). The Legislature has not seen fit to include depreciation as one of the constituent parts of the formula, and in consequence the claim of the petitioner in that respect is disallowed.

Inasmuch as the present net return to the petitioner is higher than the ceiling established by the Commercial Rent Law as reasonable rent, the application of the petitioner to fix the reasonable rent of the premises occupied by the respondent at an amount in excess of the emergency rent now paid by him is denied. No costs. Settle order on notice.